**FILED**

**JUN 2 8 2007**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**U. S. DISTRICT COURT**
**E. DISTRICT OF MO.**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | )  No. |
| vs. | ) |
| | ) |
| DACK PATRICK DAUGHERTY, | **4:07CR00387ERW** |
| | ) |
| Defendant. | ) |

## INDICTMENT

### COUNT I

The Grand Jury charges that:

#### A. Introduction

1. At all relevant times, Dack Patrick Daugherty ("Daugherty") was engaged in the real estate business in St. Louis, Missouri within the Eastern District of Missouri.

2. At all relevant times, part of Daugherty's business included the sale of homes through the Homevestors franchise in the St. Louis area. Homevestors specialized in "distressed" or "as is" residential properties whose owners were generally interested in selling home quickly and with little maintenance or improvements. Because of their special conditions, sellers were generally willing to sell "distressed" or "as is" properties at below market value.

3. This market of favorably priced real estate to which Daugherty had access provided an opportunity. By matching distressed sellers with prospective real estate investors, Daugherty and others exploited the difference between what a distressed seller was willing to take for a property and what a prospective investor, induced by special deals arranged by Daugherty and others, was

1

willing to pay, i.e., the "spread."

4. In order to exploit the spread, Daugherty and others would tell a seller of distressed property that he had found a buyer at a particular price. Daugherty would then tell the buyer that he could sell that same property at a different, much higher price. Daugherty and others would then alter the sales contract price to which the seller agreed, producing a spread. Daugherty would use this spread to pay himself (either directly or through businesses he controlled), other conspirators and, usually, the buyers. Daugherty's buyers were often convinced to buy properties by Daugherty's promise of extra cash at closing which the buyers, who planned to rent the properties, could use for maintenance expenses or to cover periods of vacancy.

5. In order to obtain financing for his buyers, Daugherty and others made multiple material misstatements of facts throughout the loan application and financing process. Typically, buyers obtained a "stated income" loan and misstated, among other things, their assets, income, liabilities, and intention to occupy a property as a primary residence. Daugherty enlisted C.R., a loan officer and W.K, a real estate appraiser, to facilitate this process. C.R. would "back out" a buyer's income and assets from the amount to be financed. That is, he came up with financial representations to be made to financial institutions not based on reality but based upon what he thought lenders would require to finance the amount of the transaction. W.K. would "max out" or inflate the value of properties to support Daugherty's sales price and would sometimes sign off on improvements as having been completed when they had not, and in some cases, would not be completed. In exchange for their participation, C.R. and W.K. received a steady stream of large fees and commissions which were larger than would be charged a typical customer.

6. In all, Daugherty arranged the sale of dozens of properties in this way and, either

2

personally or through companies he controlled, realized in excess of one million dollars through this scheme.

## B. Offense Conduct

7. Between at least December 7, 2005 and the date of this indictment, with the exact dates unknown, Daugherty and others known and unknown conspired, combined, confederated and agreed to devise a scheme and artifice to obtain the moneys, funds, credits, assets, securities and other property owned by or under the custody and control of federally insured financial institutions, by means of false and fraudulent pretenses, representations and promises as described above.

8. Between on or about December 7, 2005 and the date of this indictment,

## DACK PATRICK DAUGHERTY,

the defendant herein did knowingly and voluntarily join in an agreement with another to commit an offense against the United States, to wit:bank fraud in violation of Title 18, United States Code Section 1344, by devising a scheme and artifice to defraud financial institutions of money by means of false pretenses and material misrepresentations of fact.

Further, on or about February 21, 2006, the defendant committed an overt act in furtherance of the aforementioned conspiracy by causing a financial institution to provide $84,000.00 in financing for the purchase of 124 West Courtois St., St. Louis, Missouri within the Eastern District of Missouri.

All in violation of Title 18, United States Code, Section 371.

3

## COUNT II

9.    The allegations set forth in paragraphs 1 through 8 are hereby incorporated by reference.

10.    On or about March 8, 2006, the defendant,

## DACK PATRICK DAUGHERTY,

did knowingly engage in a monetary transaction with a value in excess of $10,000 relating to criminally derived property, to wit: the drawing of a Bankers and Lenders Title escrow account check in the amount of $17,500.00 payable to "Aerospace" which was used to pay down the defendant's debt with respect to a loan account at Aerospace Community Credit Union and which proceeds were derived from the aforementioned conspiracy to commit bank fraud.

All in violation of Title 18, United States Code Section 1957.

A TRUE BILL.

_____
FOREPERSON

CATHERINE L. HANAWAY
United States Attorney

_____
Thomas C. Albus, #96250
Assistant United States Attorney

4